UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 06-60210-Civ (Graham/O'Sullivan)**

| | |
|---|---|
| ANDRX THERAPEUTICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MALLINCKRODT INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT
## MALLINCKRODT INC.'S MOTION TO STAY PROCEEDINGS

### INTRODUCTION

In light of a recent ruling in the parallel Missouri litigation brought by Mallinckrodt Inc. against Andrx Therapeutics, Inc., Andrx Laboratories, Inc. and Andrx Corporation (collectively, "Andrx"), to the effect that the Missouri action properly was brought against all three Andrx entities and should proceed, Mallinckrodt now moves this Court to stay all proceedings in this case, pending completion of the Missouri litigation, to avoid wasteful duplicative litigation.

The court in the Missouri litigation – the U.S. District Court for the Eastern District of Missouri (Hon. Catherine D. Perry) – held that Mallinckrodt has colorable breach of contract claims against all three Andrx entities and thus was well within its rights in asserting claims against Andrx Laboratories and Andrx Corporation, in addition to Andrx Therapeutics. *See Memorandum and Order entered August 3, 2006 (hereafter "August 3 Order"), appended hereto as Exhibit 1.* Judge Perry reasoned that "both Andrx Labs and Andrx Corp. served as the main party in interest under the Agreement at some point during the period of time in which the events giving rise to this suit allegedly occurred" (*August 3 Order at 9*); each of those entities later assigned its rights under the

Agreement to an affiliated entity (*id.*); and par. 25 of the parties' Agreement expressly provides that "such assignment shall not operate to relieve the assigning party of any liability or responsibility hereunder" (*Id. at 7*). Indeed, Judge Perry concluded it was so clear Mallinckrodt has colorable claims against Andrx Laboratories and Andrx Corporation, that there was no objectively reasonable basis for Andrx to argue otherwise. On that basis, Judge Perry ordered that Andrx pay Mallinckrodt's attorney's fees and costs incurred in connection with Andrx's removal of the case to federal court and Mallinckrodt's ensuing motion to remand. *Id. at 10-11. See also, Memorandum and Order dated September 6, 2006, denying Andrx's motion for reconsideration and setting amount of attorney's fees award, appended hereto as Exhibit 2.*[1]

The effect of Judge Perry's Order is that now pending are two parallel cases involving the same subject matter and disputes, both of which will move forward absent something being done to curtail the wasteful duplication. The Missouri case involves all parties to the overall controversy, including Andrx Corporation and Andrx Laboratories, and thus has the potential to fully resolve all outstanding disputes. In contrast, the present case involves only Mallinckrodt and one of the Andrx entities – Andrx Therapeutics; and, as discussed below, any effort to join Andrx Corporation here could jeopardize subject matter jurisdiction. Accordingly, as a matter of practicality, wise judicial administration and comity, the best approach for everyone concerned – including the respective courts and the parties – is to allow the Missouri action to proceed and stay this case in the meantime.

---

[1] Mallinckrodt initiated the Missouri action in Missouri state court. Andrx then removed the case to federal court on the basis of diversity jurisdiction. However, it was at all times clear that Andrx Corporation is a Delaware corporation, as is Mallinckrodt, which destroys diversity. Accordingly, the propriety of Andrx' removal rested on its argument that Andrx Corporation was not a proper party to the Missouri action and had been fraudulently joined. Judge Perry rejected that argument and ordered the case remanded. Accordingly, the Missouri action now will proceed in state court – the Circuit Court of St. Louis County.

214635.2

As discussed below, both the facts of this case and applicable legal principles warrant the requested stay.

## BACKGROUND

This action arises out of a contract entered into between Mallinckrodt and Andrx Laboratories, Inc. ("Andrx Labs"), titled Amended and Restated Supply and Marketing Agreement, effective September 27, 2001 (the "Contract"). The Contract granted Andrx Labs the exclusive right to market and sell Mallinckrodt's brand-name pain medication, Anexsia®. In exchange, Andrx Labs agreed to purchase all of its requirements of Anexsia® from Mallinckrodt, pay certain royalties, and "use commercially reasonable efforts to maximize sales and Net Sales Revenues." *Contract (copy appended to the Complaint as Exhibit A) ¶ 9.* The Contract also entitled Andrx Labs to certain payments from Mallinckrodt in respect of sales of the generic equivalent of Anexsia®, which Mallinckrodt was to make and sell after a certain point. Unless earlier terminated, the Contract was to be in effect until October 1, 2009. *See Mallinckrodt's Counterclaim, filed June 2, 2006 (hereafter "Ctrcl."). ¶¶ 16-25.*

In the spring of 2005, Andrx Labs announced its intention to exit the brand pharmaceutical business and focus solely on generics. By December 2005, Anexsia's share of the brand pharmaceutical market had declined from thirty percent to six percent. On December 21, 2005, Mallinckrodt sent a letter to Andrx Labs alleging that Andrx Labs had failed to use commercially reasonable efforts to market and sell Anexsia® in accordance with the Contract, at least since the second quarter of 2005, and, on that basis, that Andrx Labs had breached the Contract. The letter provided Andrx Labs with a 60-day notice, required by paragraph 23(b) of the Contract, that Mallinckrodt was terminating the Contract. The letter also requested that Andrx Labs repay the

214635.2

royalties paid to it by Mallinckrodt for the second and third quarters of 2005, totaling $3,775,014, as not earned. *Ctrcl. ¶¶ 39-47.*

In or prior to December 2005, Andrx Labs assigned its rights under the Contract to its parent company, Andrx Corporation ("Andrx Corp"). Some time later, Andrx Corp assigned its rights under the Contract to a newly formed subsidiary, Andrx Therapeutics, Inc. ("Andrx Therapeutics"). [2] *Complaint ¶¶ 1,8.* Under the express provisions of the Contract (¶ 25), these related-party assignments were permissible, but they did not relieve the assigning parties of ongoing liability and responsibility under the Contract.

### The Florida Action

On February 17, 2006, Andrx Corp's freshly formed subsidiary and recent assignee of its rights under the Contract, Andrx Therapeutics, filed this action in this Court, basing jurisdiction upon diversity of citizenship under 28 U.S.C. § 1332 (the "Florida Action"). Notably, neither Andrx Labs nor Andrx Corp was named as a party in the Florida Action, even though both remained liable and responsible parties under the express terms of the Contract.[3]

In the Florida Action, Andrx Therapeutics sought a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that "the Agreement has not been terminated, or if so, that it has occurred untimely and improperly," and that Plaintiff "is not in default in its obligations under the Agreement." *Complaint. ¶ 20.* Andrx Therapeutics also tacked onto its declaratory judgment action two alternative counts for breach of contract: Count II, alleging that Mallinckrodt had anticipatorily

---

[2] Andrx Therapeutics was incorporated on or about September 27, 2005.

[3] Andrx Corp's presence as a plaintiff would have destroyed complete diversity in the Florida Action, because Andrx Corp and Mallinckrodt both are Delaware corporations. The assignment of Andrx Corp's rights under the Contract to its newly formed Florida subsidiary, Andrx Therapeutics, and the ensuing filing of this action solely in the name of Andrx Therapeutics, provided a platform for Andrx to attempt to invoke this Court's diversity jurisdiction.

214635.2

repudiated and breached the Contract; and Count III, alleging that Mallinckrodt pretextually had terminated the Contract over dissatisfaction with its financial terms, and thereby failed to exercise good faith.

Andrx Therapeutics initiated this action following Mallinckrodt's December 21, 2005 letter without waiting until the 60-day notice and cure period provided for in the Contract had expired, and thus without awaiting the effective date of the termination. Also, the Contract provides that in the event of a dispute, "the parties hereto shall endeavor to settle and compromise such claim, or may agree to submit the same to arbitration, and, if unable to agree on any settlement or compromise or on submission to arbitration, such claim shall be settled by appropriate litigation . . . ." *Contract ¶ 22(d).* Andrx did not follow that dispute resolution procedure before commencing this action. *Ctrcl. ¶¶ 51-52.*

### The Missouri Action

In contrast to Andrx's tactics, Mallinckrodt awaited the running of the 60-day notice and cure period and the effective date of the termination. Thereafter, in accordance with the dispute resolution procedures in the Contract, Mallinckrodt sent a letter to Andrx inviting it to meet and confer concerning the possibility of settlement and compromise and/or arbitration. Subsequently, a telephone meeting was held, but did not result in any agreement. Only after that, on March 10, 2006, did Mallinckrodt file suit against Andrx in the Circuit Court of St. Louis County (the "Missouri Action"). Mallinckrodt's Missouri Action sets forth comprehensive claims for breach of contract against all three potentially liable and responsible Andrx entities. *See Petition in Missouri Action ("Mo. Pet."), appended as Exhibit 1 to the Memorandum in Support of Defendant Mallinckrodt Inc.'s Motion to Dismiss, filed in this action on March 15, 2006.*

214635.2

On April 20, 2006, Andrx removed the Missouri Action to the United States District Court for the Eastern District of Missouri, on the basis of purported diversity jurisdiction. Recognizing that the requisite diversity of citizenship did not exist if Andrx Corp was a proper defendant in the Missouri Action, Andrx asserted that the joinder of Andrx Corp, as well as Andrx Labs, as defendants in the Missouri Action was fraudulent. Mallinckrodt promptly moved to remand the Missouri Action to state court and for an award of attorney's fees and costs on grounds that Defendants had no objectively reasonable basis for removal. *August 3 Order at 1-2.*

On August 3, 2006, Judge Perry granted Mallinckrodt's Motion to Remand and for an Award of Attorney's Fees and Costs. In her August 3 Order, Judge Perry stated (at 5-6):

> The narrow issue presented in this motion is whether Mallinckrodt has a colorable claim against the sole non-diverse defendant, Andrx Corp. After reviewing the briefs and accompanying exhibits, it is abundantly clear that it does. Defendants admit that Andrx Corp. was an assignee of, and therefore a party to, the contract at issue in the case. Defendants admit that Mallinckrodt did business with Andrx Corp. both before and after the second assignment. Defendants argue that Mallinckrodt has sued Andrx Corp. in part because a judgment against it would be easily collectable, which seems to admit that Mallinckrodt is bringing the claim in an attempt to win and collect, which is the opposite intent from the intent in a fraudulent joinder situation. Most importantly, defendants readily recognize that the later assignment by Andrx Corp. to Andrx Therapeutics did not relieve Andrx Corp. of any liability under the contract. . . . (footnotes omitted).

Judge Perry went on to squarely reject Andrx' argument "that because Andrx Labs and Andrx Corp. are not indispensable parties under Fed. R. Civ. P. 19(a) to the Florida lawsuit, they must be fraudulently joined in this case." *Id. at 7-8.* Judge Perry held "[t]his argument confuses two different legal standards." *Id. at 8.*

Finally, Judge Perry stated "I have scoured defendants' pleadings and briefs in an attempt to uncover a reasonable basis for their removal and have found none." *Id. at 10.* Judge Perry held: "Mallinckrodt's joinder of defendants Andrx Labs and Andrx Corp. in this action is founded on the plain language of paragraph 25 of the Agreement. The defendants have done nothing to refute

214635.2

Mallinckrodt's reliance on paragraph 25." *Id. at 11.* On that basis, she found "an award of attorney's fees and costs against the defendants to be just." *Id.*

As a result of the foregoing, the Missouri Action now will proceed forward in state court. As evident from the above, the Missouri Action will involve all of the claims and parties relevant to the overall controversy. In contrast, the Florida Action involves only a subset of the parties and issues which are the subject of the Missouri Action.

### *Impediments to Joining Andrx Corp to Florida Action*

As noted above, Andrx Corp could not be joined as a plaintiff to this action because doing so would destroy diversity jurisdiction. Further, as this Court recognized in its Order of May 10, 2006 (hereafter the "*May 10 Order*") denying Mallinckrodt's motion to dismiss (*at 10-11*), making the non-diverse Andrx Corp a third party here, and attempting to adjudicate Mallinckrodt's claims against it as an exercise of this Court's supplemental jurisdiction, could be problematic.

Some cases have held that the joinder of a non-diverse third party is permissible as an exercise of supplemental jurisdiction and does not destroy diversity jurisdiction. *See, e.g., United States Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488 (4th Cir. 1998); *Development Finance Corp. v. Alpha Housing & Health Care, Inc.,* 54 F.3d 156 (3d Cir. 1995). However, this Court observed in its May 10 Order (*at 10-11*) that the question is an open one under existing Supreme Court and Eleventh Circuit case law, citing *Ameritas Variable Life Ins. Co. v. Roach,* 411 F.3d 1328 (11th Cir. 2005). Moreover, even if jurisdiction were deemed to lie so long as Andrx Corp was deemed a third party and not a plaintiff, the possibility exists, in light of the identity of interests between Andrx Therapeutics and Andrx Corp, that the Court "would have to realign the interests of the parties, and this realignment would defeat diversity jurisdiction." *Casualty Indemnity Exchange v. High Croft Enterprises, Inc.,* 714 F.Supp. 1190, 1193 n.2 (S.D. Fla. 1990).

214635.2

The foregoing uncertainty is no trivial matter and underscores the necessity and appropriateness of Mallinckrodt pursuing its claims against Andrx Corp in the Missouri Action. Were Mallinckrodt to seek to pursue Andrx Corp in the Florida Action as a third party, in the face of the jurisdictional uncertainties mentioned above, it would run the risk of litigating for several years only to ultimately receive a ruling that the court lacks jurisdiction. In that event, the action would be dismissed and the parties would be sent back to square one – or worse, if the statute of limitations has run in the meantime.

Mallinckrodt desires to obtain a prompt and cost-effective adjudication of its breach of contract claims against all parties who may be culpable and have the wherewithal to satisfy a judgment. It has no wish to become embroiled in a quagmire of knotty jurisdictional issues which could cause it to spend tens of thousands of dollars in legal fees, and subject it to a risk that, after years of litigation, a court could throw out its claims for lack of federal jurisdiction. That is why Mallinckrodt initiated this action in Missouri state court, where jurisdiction to adjudicate Mallinckrodt's claims against all three Andrx entities clearly exists.

## ARGUMENT

### THE COURT SHOULD STAY ALL PROCEEDINGS IN THIS ACTION, PENDING COMPLETION OF THE MISSOURI ACTION, IN ORDER TO AVOID WASTEFUL DUPLICATION.

As a threshold matter, we note that the pendency of parallel actions and how wasteful duplication might best be avoided previously was before this Court in connection with Mallinckrodt's motion to dismiss this action, which the Court denied the May 10 Order. We submit, however, that present circumstances warrant further consideration of those matters, since: (1) the Missouri court now has made clear that the Missouri action properly was brought and should proceed; (2) regardless of which test for abstention applies here, circumstances that may not warrant

8

214635.2

dismissal nevertheless may justify a stay of proceedings; and (3) even if the tests for stay or dismissal are deemed to be the same, recent developments in the law suggest that the less stringent *Wilton* standard should apply here, rather than the *Colorado River* doctrine. The Missouri court's ruling is discussed above, and each of the latter two issues is discussed in turn below.

### A.  Regardless of Which Test for Abstention Applies Here, Circumstances That May Not Warrant Dismissal Nevertheless May Justify a Stay of Proceedings.

In the May 10 Order, this Court held that the question of whether the Court should dismiss this action as an exercise of abstention in light of the Missouri Action was governed by *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); *Colorado River* provides that dismissal is warranted only by the "clearest justifications;" and sufficient justifications warranting dismissal did not exist here. *May 10 Order at 9-11.* As discussed in § B, *infra*, recent developments in the law suggest that the less stringent *Wilton* standard should control abstention here, as opposed to *Colorado River*, since Andrx's declaratory judgment claims form the heart of its action. However, leaving that issue aside and assuming that *Colorado River* properly applies here, the Court's prior ruling does not foreclose the possibility of a stay of proceedings, in that circumstances which may not warrant dismissal nevertheless may justify a stay. *See, e.g., Mega Life and Health Ins. Co. v. Tordion,* 399 F.Supp.2d 1366, 1372 (S.D. Fla. 2005).

*Mega Life,* like the instant case, involved claims seeking a declaratory judgment as well as coercive relief. The defendant moved to dismiss the case on abstention grounds, in light of the pendency of a parallel state court action. The court held that *Colorado River* governed abstention in that case, and that the "exceptional circumstances" test embodied in *Colorado River* did not warrant dismissal. 399 F.Supp.2d at 1372. However, the court indicated that neither its conclusion nor reasoning was dispositive of the distinct issue of whether the federal court action should be *stayed*

2146352

pending disposition of the state court action. The Court stated "[f]or now, I express no opinion on whether a stay is appropriate. . . . The parties are free to update me on the progress of the state court action and move for a stay." *Id.*

*Mega Life* thus reflects that a court retains authority to stay an action, even where *Colorado River* governs whether abstention is appropriate and the circumstances of the case do not warrant dismissal under the *Colorado River* standard. Implicit in *Mega Life* is that a request for a stay is governed not by the stringent standards applicable to abstention, but rather by considerations of practicality and judicial economy. The foregoing is fully consistent with the well settled principle that the federal courts are vested with inherent authority to control their own dockets and, in so doing, may stay proceedings and enter other appropriate orders. *See, e.g., Clinton v. Jones,* 520 U.S. 681, 706-707(U.S. 1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). As the Supreme Court explained in *Landis v. North American Co.,* 299 U.S. 248, 254-255 (U.S. 1936):

> The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

In sum, even if *Colorado River* applies and abstention is not warranted, this Court nonetheless can and should stay proceedings in this case pending completion of the Missouri Action, to avoid wasteful duplicative proceedings and promote judicial economy.

214635.2

**B.     Alternatively, Even if the Tests for Stay or Dismissal Are Deemed to be the Same, Recent Developments in the Law Suggest that the Less Stringent *Wilton* Standard Should Apply Here, Rather than the *Colorado River* Test.**

*1.     Courts Have Broad Discretion to Stay Declaratory Judgment Actions.*

It is well settled that a federal court has the discretion to dismiss or stay a declaratory judgment action when parallel state litigation exists presenting the same issues. *See Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942); *Ameritas Variable Life Ins. Co. v. Roach,* 411 F.3d 1328 (11th Cir. 2005); *Angora Enterprises, Inc. v. Condominium Ass'n of Lakeside Village, Inc.,* 796 F.2d 384 (11th Cir. 1986); *Ven-Fuel, Inc. v. Dept. of the Treasury,* 673 F.2d 1194 (11th Cir. 1982).

As the Eleventh Circuit observed in *Ameritas,* "[t]he Declaratory Judgment Act is 'an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant.'" 411 F.3d at 1330, quoting *Wilton,* 515 U.S. at 287. "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas,* 411 F.3d at 1330. The court went on to note that "[i]n fact, in cases such as this, the Supreme Court has expressed that 'it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'" *Id.,* quoting *Brillhart,* 316 U.S. at 495. The court observed further that "[t]he Supreme Court has warned that '[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.'" *Id.*

The Eleventh Circuit, in *Ameritas,* emphasized that considerations of federalism, comity, and efficiency require district courts to balance federal and state interests in determining how to exercise their discretion to hear a declaratory judgment action during the pendency of a parallel state court

11

214635.2

action. To assist district courts in this balancing of interests, the *Ameritas* court prescribed nine "guideposts" for district courts to consider:

(1)     the strength of the state's interest in deciding the matter;

(2)     whether the judgment in the federal action would completely settle the controversy;

(3)     whether the federal declaratory action would serve a useful purpose in clarifying the legal relations in the case;

(4)     whether the declaratory remedy is being used merely for the purpose of "procedural fencing"– that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5)     whether a ruling in the federal action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6)     whether there is a superior alternative remedy;

(7)     whether the underlying factual issues are important to an informed resolution of the case;

(8)     whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9)     whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 1331.

> **2.      *Recent Case Law Suggests that Wilton, Rather than Colorado River, Should Apply to Cases Containing Both Declaratory and Coercive Claims, Where the Declaratory Judgment Aspects Form the Heart of the Action.***

The instant case contains both declaratory claims and coercive claims, that is, alternative claims for breach of contract. Although the Eleventh Circuit has not spoken on the issue of whether actions containing both coercive and declaratory claims should be governed by *Wilton* and *Ameritas*, a recent published opinion out of the Southern District of Alabama (dated May 17, 2006) addresses this precise question. In *Lexington Ins. Co. v. Rolison*, 434 F.Supp.2d 1228 (S.D. Ala. 2006), the

214635 2

court addressed whether the discretionary standard set forth in *Wilton* or the "exceptional circumstances" test of *Colorado River* should govern the decision of whether to abstain from an action containing both declaratory claims and coercive claims. *Id.* at 1234.

After carefully considering the decisions of other courts, the *Rolison* court, in a well-reasoned and detailed opinion, concluded that that the "heart of the action" test is the most appropriate standard to determine whether actions containing both coercive and declaratory claims should be governed by *Wilton* or *Colorado River*. *Id.* at 1227. Under that standard, "if the outcome of the coercive claims hinges on the outcome of the declaratory ones, *Wilton's* standard governs; conversely, if the opposite applies, *Colorado River's* standard controls." *Id.* at 1236-1237 (quoting *Coltec Industries, Inc. v. Continental Ins. Co.*, 2005 WL 1126951, 2 (E.D. Pa. 2005). Put another way, if the court concludes that the case is, at its heart, a declaratory judgment action, the discretionary standard of *Wilton* and the multifactor analysis of *Ameritas* applies. *Id.* at 1238.

The *Rolison* court adopted the more flexible "heart of the action" test over other more restrictive standards in large part because the court found the test to be more consistent with considerations of practicality and wise judicial administration:

> If peripheral monetary claims could deprive district courts of the discretion . . . to hear or not to hear what are fundamentally declaratory judgment actions, then such claims would render federal courts virtually powerless (save for the rare case in which *Colorado River* abstention is warranted) to avert wasteful, duplicative declaratory litigation on exclusively state law issues in federal court running alongside parallel state litigation on the same issues, with concomitant disruption to the time-honored values of federalism, comity and efficiency.

*Id.* at 1237. Another reason that the *Rolison* court adopted the more flexible "heart of the action" test over a more restrictive standard was to avoid abuses: "a [restrictive] rule might encourage abuses, as ***savvy litigants would recognize that creative pleading of tagalong coercive claims in***

214635.2

*tandem with declaratory judgment claims was a surefire means of circumventing Wilton and preserving a federal forum, notwithstanding parallel state proceedings.*" *Id.* (emphasis added).

> ### 3. The Wilton/Ameritas Abstention Standards Apply Here Because the Heart of Plaintiff's Action Is Its Declaratory Judgment Claim.

The instant case contains both declaratory claims and coercive claims, that is, claims for breach of contract. Nonetheless, after cutting through the "rhetorical fog" of the complaint, it is clear that the instant case is, at its heart, a declaratory judgment action. Plaintiff asks for this Court's declaration that "the Agreement has not been terminated, or if so, that it has occurred untimely and improperly" and that Plaintiff "is not in default in its obligations under the Agreement." *Complaint ¶ 20.* The Court necessarily must rule on these questions before reaching the issues of whether Mallinckrodt's actions constituted either "an anticipatory repudiation and breach of the Agreement" or a failure "to exercise good faith in the performance of the Agreement . . . ." *Complaint ¶¶ 22, 27.* In other words, the outcome of the breach of contract claims in the instant action hinges on the resolution of the declaratory judgment claim. At its heart, the instant action is nothing more than a declaratory judgment action with tagalong coercive claims.

Because *Wilton* discretion applies in this case, the question becomes whether the nine *Ameritas* guideposts favor abstention in favor of the Missouri Action. *Rolison*, 434 F.Supp.2d at 1238. Here, the *Ameritas* guideposts clearly point towards abstention.

The first *Ameritas* factor concerns the strength of the state's interest in deciding the matter. The Missouri state court has a substantial interest in deciding the issues presented in this lawsuit. Mallinckrodt's principal place of business is in Missouri, and Mallinckrodt employs thousands of Missouri residents. Additionally, hydrocodone, one of the two active pharmaceutical ingredients used to make the product at issue in the case, is manufactured in Missouri.

214635.2

Second, *Ameritas* looks to whether the judgment in the federal action would completely settle the controversy. Here, it undoubtedly would not. The Florida Action is merely a subset of the Missouri Action. Indeed, two parties to the Missouri Action – Andrx Labs and Andrx Corp – are not parties to the instant action, and, as discussed above, Andrx Corp cannot be made a party to the instant action without jeopardizing subject matter jurisdiction. This element clearly militates in favor of abstention.

The third *Ameritas* guidepost is whether the federal declaratory action would serve a useful purpose in clarifying the legal relations in the case. Again, the instant action could only provide partial clarification, because the present case involves only part of the claims, and some of the parties, relevant to the overall disputes arising under the Contract. Accordingly, a judgment in this action would not settle the controversy. Conversely, the Missouri action *does* involve all claims and pertinent parties, and thus would serve a useful purpose in clarifying the legal relations in the case.

The fourth *Ameritas* consideration is whether the declaratory remedy is being used merely for the purpose of "procedural fencing." The chronology of events leading up to the instant action leads to the inescapable conclusion that Plaintiff raced to the courthouse to file this action in anticipation of Mallinckrodt filing a lawsuit of its own. It is undisputed that this action was filed shortly after Mallinckrodt had served its notice of default and termination, asserting that Andrx Labs had breached the Contract and was liable to Mallinckrodt for millions of dollars in damages. Plaintiff rushed to initiate this action before the 60-day notice and cure period had run, and without complying with the requirements of the Contract that, in the event of a dispute, the parties explore settlement and compromise, and discuss the possibility of submitting the controversy to arbitration, before resorting to litigation. This element by itself favors abstention. *See Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005).

214635.2

The fifth *Ameritas* guidepost is whether a ruling in the federal action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction. Here, it undoubtedly would. The instant action may have *res judicata* effect on the Missouri Action, and vice versa.

The sixth *Ameritas* consideration clearly militates in favor of abstention. The present case involves only part of the claims, and some of the parties, relevant to the overall disputes arising under the Contract. Accordingly, a judgment in this action would not settle the controversy. Conversely, the Missouri action *does* involve all claims and pertinent parties, and thus provides a superior vehicle for resolving the entire controversy.

The seventh and eighth *Ameritas* guideposts are "whether the underlying factual issues are important to an informed resolution of the case" and, if so, "whether the state trial court is in a better position to evaluate those factual issues than is the federal court." *Rolison*, 434 F.Supp.2d at 1242 (citations omitted). Here, the Missouri court is in a better position to evaluate the facts, because all claims and pertinent parties are before it, while this Court only has a subset of the parties to the Missouri Action. Simply put, the state court would be able to see the entire picture, rather than just a portion of it as presented by Andrx Corp's newly formed subsidiary and recent assignee of its rights under the Contract, Andrx Therapeutics.

The final *Ameritas* guidepost directs district courts to consider whether federal common or statutory law dictates a resolution of the declaratory judgment action. This factor clearly points towards abstention. The instant action implicates exclusively state law issues, not federal law issues.

In sum, the *Ameritas* guideposts point towards abstention. Accordingly, considerations of practicality, wise judicial administration and comity would be better served by staying the instant action. It is simply a waste of resources to permit duplicative proceedings in this case to go forward

214635 2

when the Missouri Action provides a more comprehensive, and thus better, vehicle for resolving the

parties' disputes.[4]

## CONCLUSION

For all of the foregoing reasons, we submit that this Court should stay further proceedings in

the instant action, pending final completion of the Missouri Action.

Respectfully submitted,

Gerald P. Greiman
Daniel D. Doyle
Jennifer A. Chierek
SPENCER FANE BRITT & BROWNE LLP
1 North Brentwood Blvd., Suite 1000
St. Louis, MO 63105
Telephone: (314) 863-7733
Facsimile:  (314) 862-4656


Paul O. Lopez
*Florida Bar No.: 0039780*
Alex D. Brown
*Florida Bar No.: 0752665*
TRIPP SCOTT, P.A.
110 Southeast Sixth Street, 15th Floor
Ft. Lauderdale, Florida 33301
Telephone: (954) 525-7500
Facsimile: (954) 761-8475

Counsel for Defendant/Counterclaimant

---

[4] A stay of the instant action will assure that it can still proceed if the Missouri Action fails to resolve the matters in controversy between the parties.

214635.2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing has been furnished via U.S. Mail and facsimile to:

**Charles H. Lichtman, Esq.,** Berger Singerman, 350 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, FL 33301; *Counsel for Plaintiff*; this _____ day of September, 2006.

214635.2