UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-60210-CIV-O'SULLIVAN
[CONSENT]

ANDRX THERAPEUTICS, INC.,

        Plaintiff,

v.

MALLINKRODT, INC.,
a Delaware corporation,

        Defendant.
_____/

## ORDER

THIS MATTER came before the Court on the Defendant Mallinkrodt Inc.'s Motion for Partial Summary Judgment (DE# 119, 3/7/07). Based on the parties' Joint Election to Jurisdiction by a United States Magistrate Judge, this matter was referred to United States Magistrate Judge John J. O'Sullivan by the Honorable Donald L. Graham, United Stated District Court Judge for the Southern District of Florida (DE# 92, 12/11/06). Having heard argument from counsel on May 1, 2007, and having reviewed the applicable filings and law, it

ORDERED AND ADJUDGED that the Defendant Mallinkrodt Inc.'s Motion for Partial Summary Judgment (DE# 119, 3/7/07) is GRANTED for the reasons set forth below.

## FACTUAL BACKGROUND

This action arises from an Amended and Restated Supply and Marketing

Agreement entered into between Mallinkrodt and Andrx Labs (hereinafter the "Contract"), and a related Anexsia® Trademark License Agreement (the "License Agreement") entered into in connection with the Contract.

The Contract provided that Andrx Labs would market and sell the branded versions of Anexsia®, and pay certain royalties for such sales, as well as other amounts, to Mallinkrodt. Andrx Labs was required to purchase and market the Anexsia® products manufactured by Mallinkrodt. The Contract provided that unless earlier terminated in accordance with its terms, the Contract was to remain in effect until October 1, 2009. (Contract § 23).

On December 21, 2005, Mallinkrodt sent a letter to Andrx Labs providing 60 days' advance notice that Mallinkrodt was terminating the parties' Contract for cause.

On December 28, 2005, Andrx Labs was dissolved. In or about December, 2005, Andrx Labs assigned to Andrx Corp. all of its rights, liabilities and interests under the Contract and License Agreement, and Andrx Corp. assumed such rights, liabilities and interests. On January 13, 2006, and February 10, 2006, Andrx sent letters to Mallinkrodt disputing the assertions contained in Mallinkrodt's December 21, 2005 letter.

From the Complaint filed in this action on February 21, 2006, Mallinkrodt learned that Andrx Labs had been dissolved as a corporation in December, 2005, and that the assignment to Andrx Corp, and subsequent assignment to Andrx Therapeutics, had occurred.

On March 9, 2006, Mallinkrodt sent a further letter to Andrx, stating that it was a supplement to its earlier notice of termination dated December 21, 2005. The March 9,

2006, letter stated in part: "the dissolution of Andrx Labs provides cause for termination of the Agreement. On that basis, Mallinkrodt hereby reiterates and confirms its termination of the Agreement, with the foregoing circumstances providing additional grounds for such termination."

Section 23(b) of the Contract contains the termination clause at issue and provides in pertinent part:

> (b) In addition to any other right of termination specifically provided for hereunder, this Agreement may be terminated by either party for cause upon written notice to the other. For purposes of the preceding sentence, "cause" shall mean (without limitation):
>
> (I) any material breach of this Agreement or the Anexsia® Trademark License Agreement by a party which shall go uncorrected for a period of sixty (60) days after written notice of such breach has been given to the defaulting party,
>
> (ii) the institution by a party of voluntary proceedings in bankruptcy or under any insolvency law or law for the relief of debtors,
>
> (iii) the making by a party of an assignment for the benefit of creditors or any dissolution or liquidation,
>
> (iv) the filing of an involuntary petition under any bankruptcy or insolvency law against a party, unless such petition is dismissed or set aside within sixty (60) days from the date of its filing, or
>
> (v) the appointment of a receiver or trustee for the assets or business of a party, unless such appointment is dismissed or set aside within sixty (60) days from the date of such appointment.

The License Agreement provided for termination if the Contract or License Agreement was terminated for cause. See License Agreement § 7.1; Contract § 23(e).

Mallinkrodt's motion for partial summary judgment is based solely on Mallinkrodt's allegations that the dissolution of Andrx Labs constitutes cause for termination pursuant to Section 23(b)(iii) of the Contract as expressed in its March 9, 2006 letter.

## ANALYSIS

### I.   Standard of Review on Motion for Summary Judgment

The court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of meeting this exacting standard. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). That is, "[t]he moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323).

In assessing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. See Batey v. Stone, 24 F.3d 1330, 1333 (11th

Cir. 1994); See also Sheckells v. Agv-Usa Corp., 987 F.2d 1532, 1534 (11th Cir. 1993); Browning v. Peyton, 918 F.2d 1516, 1520 (11th Cir. 1990); Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1368 (11th Cir. 1982); Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)(per curiam).  Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain.  See Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997).  If the record presents factual issues, the court must deny the motion and proceed to trial.  Adickes, 398 U.S. at 157; See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Despite these presumptions in favor of the non-moving party, the court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the court occasioned by an unnecessary trial.  Celotex, 477 U.S. at 322-323. Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures.  Id.  As the Supreme Court noted in Celotex,

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id. at 322-323.  Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  There must be evidence on which the jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 251; See also

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## II. Under New York law, the termination clause is enforceable as written.

Pursuant to the choice of law provision contained in the Contract, the parties agree that New York law applies. There is no dispute that Andrx Labs dissolved on December 28, 2005, when it filed its Articles of Dissolution in the state in which it was incorporated. The Contract contains a termination provision that permits termination if a party dissolves. Contract § 23(b)(iii). Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002). "It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed." Morlee Sales Corp. v. Manufacturers Trust Co., 172 N.E.2d 280, 282 (N.Y. 1961).

When the parties to a contract have agreed to a termination clause, the clause should be enforced as written. A.S. Rampell, Inc. v. Hyster Co., 144 N.E.2d 371, 382 (N.Y. 1957); Cycleway, Inc. v. Kawasaki Motor Corp. U.S.A.,354 N.Y.S.2d 812, 816 (N.Y. Gen. Term 1974); Joseph Victorini Wines, Inc. v. Vina Santa Carolina S.A., 933 F. Supp. 347 (S.D. N.Y. 1996) (granting summary judgment in favor of valid termination); Robert J. McRell Associates, Inc. v. Insurance Company of North America, 677 F. Supp. 721, 728 (S.D. N.Y. 1987) ("The language in a termination clause of a contract must be enforced as written if, as here, it is not ambiguous.").

The Contract expressly gave Mallinkrodt the right to terminate the Contract for "cause" upon "any dissolution or liquidation." Contract § 23(b)(iii). Black's Law

Dictionary defines "dissolution" as "[t]he act of bringing to an end; termination" as well as "[t]he termination of a corporation's legal existence by expiration of its charter, by legislative act, by bankruptcy, or by other means; the event immediately preceding the liquidation or winding-up process." Black's Law Dictionary 486 (7th ed.1999). Upon learning of Andrx Labs' dissolution, Mallinkrodt notified Andrx Labs of its termination of the Contract on that ground in March, 2006.

Unlike other subsections of Section 23 of the Contract, the right of termination afforded by Subsection 23(b)(iii) for "any dissolution" did not require that 60 days advance notice be given to allow the plaintiff an opportunity to cure. The inclusion of the 60 day notice period in three of the five termination clauses reveals that the parties knew how to express and require such notice and opportunity but chose not to do so for termination based on dissolution. See Contract ¶¶ 23(b)(I), (iv), and (v). The plaintiff's argument that it did not receive an opportunity to cure or undue its dissolution lacks merit.

The defendant relies on Hal Roach Studios v. Film Classics, 68 F. Supp. 563, 567 (S.D.N.Y. 1946) and other cases. In Hal Roach Studios, the license agreement required the defendant to remit percentages of gross receipts and authorized termination of the contract if the defendant failed to do so. Id. at 564. The court enforced the termination clause explaining that "the precise breach, default, or contingency specified in the contract must be shown to have occurred," and

> [I]f the particular event occurs, it is immaterial how little relation it may appear to have to the substance of the contract, or how unreasonable it may seem ... to make the continued existence of the contract depend on it.

7

> If the case arises in which the right to rescind was reserved, that right may be exercised, the parties having so contracted.

Id. at 567 (quoting Black, Rescission of Contracts and Cancellation of Written Instruments, 1278-79 (2d. ed., Vol. 2) (internal quotations omitted)).

In the present case, the defendant exercised its right to terminate the Contract as afforded by Sub-section 23(b)(iii), which provides in pertinent part:

> (b)  In addition to any other right of termination specifically provided for hereunder, this Agreement may be terminated by either party for cause upon written notice to the other.  For purposes of the preceding sentence, "cause" shall mean (without limitation):
>
> > (iii) the making by a party of an assignment for the benefit of creditors or any dissolution or liquidation....

Pursuant to the terms of the Contract, "any dissolution" triggers the defendant's right to terminate.  The plaintiff's argument that the dissolution is not a material breach lacks merit.   What effect, if any, the dissolution has on the performance of the Contract is immaterial to the defendant's contractual right to terminate the Contract on that basis. The law is well established that an unconditional right to terminate a contract without cause by simply providing notice of termination is absolute and will be enforced without inquiry into the reasons or motive for the termination.  See Red Apple Child Dev. Ctr. v. Community School District, 756 N.Y.S.2d 527, 529 (N.Y. App. Div. 2003) ("Such a termination is enforceable regardless of the cause of termination.")  "[W]here a termination clause permits the parties to terminate an agreement at will on twelve months written notice, the courts do not qualify an otherwise absolute power to terminate by requiring termination to be in good faith."  Joseph Victorini Wines, Inc. v.

<u>Vina Santa Carolina S.A.</u>, 933 F. Supp. 347, 353 (S.D. N.Y. 1996).  In the present case, the defendant had an absolute right to terminate the Contract based on the plaintiff's dissolution in December, 2005.  In its March 9, 2006 letter, the defendant properly notified the plaintiff that it was terminating the Contract because it learned of the plaintiff's dissolution.

The plaintiff argues that a technical breach cannot serve as a basis for rescission of a contract.  The plaintiff further argues that whether the breach is material or technical presents a question of fact that precludes summary judgment.  (Pl.'s Notice of Suppl. Authority at 1). The plaintiff maintains that termination is an unconscionable penalty because the defendant has not been prejudiced or otherwise adversely impacted by the dissolution of Andrx Labs.  This Court disagrees.

The cases upon which the plaintiff relies are factually distinguishable and inapposite.  Unlike the termination clause at issue in the present action, the cases cited by the plaintiff involve acceleration and other penalty clauses that result in forfeiture. The analysis is different when the clause, which is not a termination clause, has the effect of penalizing the defaulting party and invokes the equitable powers of the court.

> Agreements providing for the acceleration of the entire debt upon the default of the obligor are often enforced in accordance with their terms..., but where the breach asserted as the basis for the acceleration is trivial or inconsequential, the forfeiture may be viewed as an unconscionable penalty and equitable principles come into play.

<u>Tunnell Publishing Co. v. Straus Communications, Inc.</u>, 565 N.Y.S.2d 572, 169 A.D. 1031, 1032 (N.Y. App. Div. 1991) (internal and other citations omitted).  In such cases, the courts analyze the default as material or technical.  If there is no adverse

9

consequence (i.e. prejudice) resulting from the default, the courts find it to be "technical" and not subject to the penalties of the acceleration clause.  Alternatively, if the default results in prejudice to the non-breaching party, the courts will enforce the acceleration or other penalty clause.

Where, as here, the parties agreed in plain and unambiguous terms that the Contract could be terminated for cause for "any dissolution," there is no place for inquiry into the materiality of the plaintiff's dissolution. Contract § 23(b)(iii).  The plaintiff concedes that the law requires the Contract to be afforded its plain meaning.  Pl.'s Resp. at 21.  Yet, the plaintiff seeks to have this Court read into the Contract the word "involuntary" to qualify the term "any dissolution" and change the termination clause to permit termination based on dissolution due to insolvency.  To support its position, the plaintiff argues that

> [t]he drafters [of the Contract] are sophisticated corporate attorneys.  They know that a dissolution based on insolvency has the potential to devalue their clients' assets, while an asset sold or transferred to an affiliate as part of a voluntary dissolution does nothing to change its value.  In short, they understand the difference between a voluntary and involuntary business reorganization. Id.

If the parties intended dissolution to be limited to insolvency as the plaintiff argues, they should have said so.  "[A] written agreement ... must be enforced according to the plain meaning of its terms."  Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002).  As written, the plain meaning of "any dissolution" in the termination clause of the Contract is unqualified and includes voluntary as well as involuntary dissolution.  The Court cannot and will not re-write the parties' agreement.  See A.S. Rampell, Inc. v.

Hyster Co., 144 N.E.2d 371, 382 (N.Y. 1957); Cycleway, Inc. v. Kawasaki Motor Corp., U.S.A., 354 N.Y.S.2d 812, 816 (N.Y. Gen. Term 1974).

In the present action, when the plaintiff dissolved in December 2005, the defendant had the absolute right to terminate the parties' Contract pursuant to Sub-section 23(b)(iii).  New York law requires this Court to enforce the unambiguous terms of the termination provision in the Contract.   The undisputed facts and applicable law show that the plaintiff was dissolved and that its dissolution entitled the defendant to terminate the Contract for cause.  Likewise, the License Agreement was properly terminated.  See License Agreement § 7.1; Contract § 23(e).  This Court finds that the termination was valid and properly exercised by the defendant.  "[W]hen, as here, the court can determine the parties' intent by looking at the agreement, the issue is one of law and should be decided by summary judgment."  Pharmaceutical Horizons, Inc. V. Sterling Drug, Inc., 512 N.Y.S.2d 30, 31 (N.Y. App. Div. 1987)(citations omitted).

The defendant's motion for partial summary judgment is granted in its favor for its termination of the Contract for cause based on the plaintiff's dissolution.

DONE AND ORDERED, in Chambers, at Miami, Florida, this  9th day of May, 2007.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record